# ROBERT W. POTTER *vs.* MOSES & GRAY.

Where one of several co-partners deserts the firm, such firm is dissolved between him and the remaining co-partners; but if the remaining co-partners elect to continue the company business between them, the firm continues, and will not be dissolved by the subsequent death of the deserting co-partner.

Where four persons formed a co-partnership, agreeing to share equally in the net proceeds, and associated with them three other persons, who were to labor for them, and to receive, each, one-fourteenth part of the net proceeds, it was held that the persons so associated were not co-partners, but laborers paid by a certain share of the profits, in lieu of wages, and that their desertion did not dissolve the co-partnership.

A co-partnership, formed for mining and trading in California, though not expressed to be for any definite period, will be presumed to be intended to last, at least, one mining season, and cannot be dissolved at will.

Where such a co-partnership engaged men to work for them for one year, to be paid by a share of the profits, this was held an implication that the co-partnership was designed to last a year.

Where, by the contract of co-partnership, one partner furnishes the money and outfits for the company, and the other partners agree to transact the business, the skill and labor of the business partners are as much a part of the capital of the company as the money and outfits; and property acquired by such partners, whether by their skill and labor, or by the employment of the company funds, in company, or in other business, on company or on private account, is co-partnership property.

THIS was a petition for an injunction upon the sum of $2,724,52, deposited in the "State Bank," by the defendants, to their individual account, and claimed by the plaintiff as partnership property. Having filed his bill as a co-partner of the defendants for an account of the partnership property and transactions, the plaintiff ap-

plied to have this money placed in the hands of a receiver, or in the registry of the Court, to abide the final decree on the bill.

The plaintiff produced a contract of copartnership, signed by himself and the defendants, and one James M. Livesey, on the 9th of July, 1849, reciting that they had agreed " to engage in a mining and trading expedition to California as co-partners;" that the said Potter was to remain in Providence as the general agent of said parties; and that the said Moses, Gray and Livesey, were to embark on said expenition for said California, the said Moses to act as the agent there of said parties; and that the said parties, by an agreement of even date therewith, had associated with them, John Livesey, Henry Chadwick and James Whitehead, who were to embark with, and work and labor with and for them, at said California; and, that in consideration of the premises, they had agreed, and did thereby agree, that all that portion of the gain or profit, arising from said expedition, which under and by virtue of said agreement, should belong to and be payable to them, (the said Potter, Moses, Gray and Livesey,) should be divided by and between them equally.

By an agreement of the same date with this, the parties to the above agreement, agreed with the said John Livesey, Henry Chadwick, and James Whitehead, to furnish them severally with a passage to California, and to provide for them the requisite tools and implements for mining, and their board from the time of their departure up to the expiration of one year from and after their arrival in California; and they on their part agreed to embark on the voyage, and continue in the employ of the

said Potter, Moses, Gray and Livesey, working diligently
at the mines and elsewhere for them in California, and to
deliver to the said Moses, all the gold, gold dust, and
other metals and minerals that should from time to time
be procured by the said parties or either of them. And
it was further agreed, that the proceeds of the mining
and trading, should, from time to time, be forwarded to
some one of the Atlantic Ports, to the care and charge of
the said Robert W. Potter, to be by the said Potter, as
the general agent of said parties, converted into coin;
and, after first deducting all the expenses attending the
passages, board, freight, insurance and all other expenses
attending said California expenition, the one-fourteenth
part of the net proceeds should be paid to each of the
said John Livesey, Henry Chadwick and James White-
head, severally, and the residue of the net proceeds, to
wit, the other eleven parts, should be equally divided be-
tween the said Potter, Moses, Gray and Livesey: *Pro-
vided, however*, in case either of the said John Livesey,
Henry Chadwick and James Whitehead, should at any
time during said term of one year, from the time of their
arrival at said California, wilfully leave the service and
employment of said Potter, Moses, Gray and Livesey,
such person, so leaving, should forfeit all claim or right
to his portion of said net proceeds.

It appeared by affidavits, and by the answer of the de-
fendants to a bill brought by the plaintiff, praying for an
account of the partnership transactions, that the parties
to the above agreement, except Potter, sailed for Cali-
fornia, and that Potter furnished the outfits for them, and
made advances for the purposes of the company, to the
amount of about $4,500. On their arrival at Panama,
the company took a brig for San Francisco, putting in at

Acapulco to make purchases of corn and cocoanut, which they carried to San Francisco, and there sold at an advance upon the prime cost. After their arrival in California, James M. Livesey left the company. It appeared by affidavit that there was some difficulty between Livesey and Moses & Gray on the voyage ; and in one of his letters, written at the time, Moses complains of his conduct to Potter, stating that he had $250 of their money, which he refused to give up, and in another letter, that Livesey had left them, and that "he (Moses) would not go to the mines with him for all the gold there was in them." In the same letter, Moses informs Potter that he is about to start for the mines ; and that there is a doubt whether Chadwick and Whitehead will go with them and abide by their agreement. The answer sets forth that on the 20th of February, 1850, they arrived at Ousley's Bar, with a balance of about $50,70 of the co-partnership funds in their hands ; that they had earned and acquired at said Bar, gold to the amount of about $212, up to the 24th of March, 1850, and that on or before that day the said John Livesey, Henry Chadwick and James Whitehead, left and deserted, and refused to work for and with the defendants. And the answer further states, that on or before the 4th of July, 1850, James M. Livesey died ; and it denies that the money deposited in Bank is copartnership property.

There was no evidence which showed distinctly how this money was acquired ; but there were affidavits that the defendants had said on their passage home, that they had done well while in California ; that Moses stated, they employed ten men to work for them at the mines, and that, when they left the mines they sold the provisions which they had at the time, for nearly $500. It

also appeared that they were well furnished, out of the partnership funds, with the tools and appliances for mining. There was also evidence, that, at the time they departed for California, they were entirely without property.

For the defendants, it was contended,

1st. That one partner can dissolve a partnership for an unlimited time, even without notice. (Collyer p. 92, sec. 109.)

2d. A partnership may be dissolved by the extinction of the subject matter of the joint undertaking or business. (Collyer p. 100, sec. 115. Story p. 406, sec. 280.) This partnership was dissolved by the force of circumstances, the basis being destroyed on which it rested, before this money was acquired. The partnership was based entirely upon the idea, that a company was to be kept up for the purpose of mining. It was to consist of three laborers, and three principal partners. This is not a mere formal, but a substantial matter. Mining cannot be carried on by one person for any profitable purpose. But it may be said that this was both a mining and a trading expedition; and if disabled for mining, they might engage in trading. But it is evident that trading was to be a mere incident of the mining. There was no more than capital enough to get the men to the mines and support them until there should be some returns from their labor. So that, if any trading was to be done, it was to be done with the earnings of the mining. *Waring vs. Cram*, (1 Parsons Select Equity Cases 516.)

3d. The partnership was dissolved by the death of James M. Livesey, if not dissolved by any of the foregoing causes. Whether the partnership was limited or

unlimited, the society of all was dissolved by the death of one. (Collyer p. 92, sec. 107.) Even admitting that these funds were acquired by mining, there is no proof that they were not acquired after Livesey's death.

4th. This is a partnership at will, and, therefore, can be dissolved at the express desire of any of its members. The fact that the men were engaged for one year after their arrival in California, is no implication that the partnership should continue for a year; any more than there is, if an unlimited manufacturing company imports laborers from abroad, on contracts for one, two or three years, an implication that it shall last that time.

5th. Where the partnership is dissolved by the loss of the basis, there is no need of any notice. It is not then dissolved by acts of party, but by force of circumstances.

6th. The Court will not grant the injunction without strict proof that this is partnership property. This is denied in the answer which is to be allowed the full force of an affidavit upon that point.

For the plaintiff, it was contended.

The three laborers, who were to have each one-fourteenth part of the proceeds, constituted no part of the partnership. They were hired men, paid by a share in the profits. *Inter sese* it was never intended they should be partners, whatever the law might imply for the benefit of third persons. But, even if they were partners, their desertion does not dissolve the firm, since its continuance is contemplated in the contract after they leave, by providing for a forfeiture of the profits to the partnership upon their leaving.

The use of the co-partnership funds entitles the partners to share in the profits. The defendants assert that

on their arrival at the mines they had only fifty dollars, and, when the men deserted, there was nothing left with which to carry on the partnership business. But they had used the plaintiff's money to get there. If they had no partnership capital in money, they had a capital in location, which, together with their skill and industry, was intended to be the business capital of the firm. This was the basis and substratum of the partnership, and was so worked into it, that it could not be destroyed except by the destruction of the partners themselves. Whatever acquisitions they made were the product of this capital—this location—for which they were indebted to Potter, and consequently they could not divest him of his share of the profits accruing thereon.

But it is said it is not proved that this money is the proceeds of the partnership business. They had no right to pursue any other business clandestinely, and if they have in this way made a profit, the plaintiff has a right to share in it. They have given no notice that the partnership was dissolved, but have chosen to act clandestinely, and therefore cannot, now the expedition has turned out profitably, keep the profits, when, if it had turned out unprofitably, they might have held the plaintiff liable for losses.

They say mining cannot be profitably prosecuted except in numbers. This is a mere assumption; if they set it up as a defence, they must prove it. They had the right to hire other men on partnership account. There is proof that they did have other men in their employ. Now to whom belong the profits of this new association. They put in the tools and appliances, and credit of the partnership, and while this was so they

could make no arrangement which would not enure to the benefit of the firm. There was no time when it can be inferred that they did not have the means to go on, because they did in fact go on.

They have not accounted for the profits of their purchases at Acapulco, nor stated whether they consider it partnership, or individual gain.

But they say the partnership was dissolved by Livesey's death. This is not an ordinary partnership. It was an undertaking to go to a new climate, where they would be subjected to many exposures, and, though death is not spoken of, yet it could never have been contemplated, that the death of one, after getting to the mines, should dissolve the partnership. Besides, if the defendants chose to take advantage of the death, they should have stopped instantly and accounted. Death by no means dissolves a firm, if the survivors choose not to treat it as a dissolution.

They say the partnership was unlimited and might be dissolved at the will of one of the partners. But the hiring of the men for a year is an implication that the partnership should last a year.

The proof that is required in this case, if sufficient to satisfy the mind of the Chancellor, is stringent enough. The defendants have denied this to be partnership property in their answer; but in their answer they have concealed material facts, so that it would not receive credit as an answer, and it cannot have, as an affidavit, greater credit than it would have as an answer.

CARPENTER and BRADLEY for the plaintiff.

AMES & PAYNE and SAYLES for the defendants.

This cause was heard by Greene, C. J., sitting alone in Chambers, and the opinion was delivered by him.

GREENE, C. J.   The plaintiff advanced to the defendants for the purposes of the joint undertaking, $3,343 in money, and $1,064,79 in outfits.

The defendants, with James M. Livesey, and John Livesey, Whitehead and Chadwick, all arrived in California, their expenses having been defrayed out of the money advanced by the plaintiff.

In the course of the voyage some difficulty appears to have arisen between the defendants and James M. Livesey.

On the 29th of January, 1850, after their arrival at San Francisco, the defendant, Moses, addressed a letter to the plaintiff in which he complains of the conduct of James M. Livesey, and says, " I think you had better send out a power of attorney, and we will dissolve with him, or he may give us some trouble."   In the same letter he says, " I think they (meaning Livesey and the Captain of the brig in which they took passage from Panama,) and the Dutchman will go to the mines together."

On the 9th of February, following, he addressed another letter to the plaintiff, in which, after speaking of Livesey's conduct in keeping away from them, and doing all he could to injure them, he says, " I would not go to the mines with him for all the gold there is in them."

Livesey never did go to the mines with the defendants, but left them and withdrew entirely from the business of the company.

It appears, therefore, that the defendants, so far from

considering Livesey's withdrawal from the company as any ground of dissolution, as between the plaintiff and defendants, were anxious to exclude him, considering the business of the company could be more successfully prosecuted without him than with him. And these letters are notice to him that they should continue to prosecute the joint undertaking, notwithstanding Livesey had left them.

In the same letter, the defendant, Moses, informs the plaintiff that he had seen Chadwick and Whitehead, and endeavored to persuade them to go to the mines according to their contract, but they refused. But there is no intimation in the letter that their refusal would be considered as a ground for dissolving the partnership, and breaking up the joint undertaking, or even that it would impede its successful prosecution.

In the same letter he states that John Livesey would go to the mines with them.

It does not appear from the answer, or any evidence in the cause, whether Chadwick and Whitehead, or John Livesey, went to the mines. The answer states that the said defendants, after a short stay in San Francisco, started for the mines, and arrived at Ousley's Bar, about the 20th day of February, 1850. That they earned and acquired at said Bar, gold to the amount of about two hundred and twelve dollars, up to the 24th of March, 1850. That on or before that day, both the Liveseys, Whitehead and Chadwick, left and deserted the defendants, without their license or permission, and refused to work for and with them.

The statement in the answer is very ambiguous as to the time when they left, but taken in connection with the letters, I should infer that John Livesey was the on-

ly one who went to the mines with the defendants, and that he left about the 24th of March, 1850.

The answer states that on the 4th of July, 1850, James M. Livesey died.

The defendants remained in California until August, 1850, when they embarked for the United States; and, after their arrival in Providence, they deposited the sum of $2700 to their individual credit in the State Bank.

The defendants allege in their answer, that this money is the individual property of the defendants, and not company property; and this is the main question in the cause.

The counsel for the defendants have contended that the co-partnership between the plaintiff and the defendants, and Livesey, was dissolved by the refusal of Chadwick, Whitehead and John Livesey, to work at mining for the company, in compliance with their agreement; that in point of fact mining in California cannot be carried on by two persons only, and, all the others having deserted, the partnership ceased because its business could no longer be carried on.

I do not think Chadwick, Whitehead and John Livesey, under their agreement with the company, became co-partners therein. The receipt of a portion of the profits might render them partners as regards creditors, but as between themselves and the company who employed them, they were hired as servants to work for the company, to receive their compensation in a certain part of the profits, instead of a stipulated rate of wages.

Nor do I consider the desertion of these men as any reason for the defendants to treat the co-partnership as dissolved, if the defendants could work advantageously without them, or if they could hire others to assist them.

Robert W. Potter *vs.* Moses & Gray.

It would be unreasonable to suppose the parties intended the prosecution of the undertaking should depend entirely upon the fidelity of these three men, although others might be employed in their stead, more especially when it was known how apt men so employed were to desert their employers on their arrival in California.

It may be doubtful whether the defendants were authorized to hire men to work at the mines at the stipulated price, and thus pledge the credit of the firm for the payment of wages ; but they were authorized to employ other men paying them in profits, that being the mode of payment provided for in the agreement with Chadwick and the other two. The defendants do not allege in their answer they could not work advantageously without other hands to help them, or that other hands could not be procured, nor have they offered any proof to that effect, and I cannot assume either of these alternatives to be true, in the absence of all evidence.

In fact, there is evidence in the cause to the contrary. James F. Eddy states in his affidavit, the defendant, Moses, told him they employed ten men in mining on their, the defendants, account.

But laying this evidence out of the case, we think the fact relied on by the defendants as working a dissolution of the co-partnership must be proved, and, as already stated, they have offered no evidence to prove it, and do not even allege it in their answer. Besides, if the defendants intended to dissolve the partnership on this account, it was their duty to have given prompt notice thereof to the plaintiff, and to have treated the company property as if the partnership were dissolved.

They give no notice to the plaintiff and take no steps to wind up the company affairs, but retain in their hands

all the company profits and use them for aught that appears, as if the co-partnership had continued, and render no account of them.

There is another difficulty in this part of the defence. The fact that the prosecution of the company business had become impossible, does not of itself dissolve the co-partnership. It may be a sufficient ground for a Court of Equity to decree a dissolution, but until such a decree, the partnership remains.

Another ground relied on by the defendants for a dissolution of the co-partnership, is the death of James M. Livesey.

As a general rule of law, there can be no doubt the death of a partner dissolves the co-partnership. But in this case, Livesey had withdrawn from the firm, not only without objection by the defendants, but with their approval. He had taken with him, in money and tools, a large amount belonging to the company, without having contributed anything to the capital of the company, and had therefore no interest in the partnership funds at the time of his withdrawal and death. He was a debtor to the firm. He could not claim any portion of the profit of the partnership accruing after such withdrawal. In fact, we consider that event under the circumstances, a dissolution of the partnership so far as Livesey was concerned. His subsequent death, therefore, can have no effect upon the partnership existing between the plaintiff and the defendant.

There is another difficulty in this ground of defence. The defendants gave the plaintiff no notice of Livesey's death, and took no steps to wind up the company concerns, but, on the contrary, retained in their hands all the

company property and employed it as they pleased, without rendering to the plaintiff any account thereof.

The defendants also contended, that by the agreement, the co-partnership was to continue for no definite period, and, therefore, either party might dissolve it at his will.

By the articles of co-partnership, the parties agree to engage in a mining and trading expedition to California, as copartners. I think this means that the parties engage to each other for at least one mining season. If the construction contended for by the defendants should be adopted, the moment the partners arrived at the mines, (their expenses having been, as in this case, paid by the partner at home,) any one of them at his will, might dissolve the co-partnership, and thus absolve himself and his companions from all obligations to the partner at home.

But, however this may be, the agreement with the three men employed exclusively to work at mining, provides that they shall work for one year from the time of their arrival in California. As they were to mine for the co-partnership during this period, I think the necessary inference is, that the co-partnership was to continue during the same period.

After a careful examination of the subject, I have come to the conclusion that this co-partnership was not dissolved by any of the causes which have been assigned by the defendants, so far as the plaintiff and defendants are concerned.

While the partnership subsisted, the skill and labor of the defendants constituted a part of its capital stock, as much as the money and outfits furnished by the plaintiff; and the defendants had no right to apply this skill and labor to mining and trading, or to any other business on

their private account. This would be a violation of their obligations to the firm, and all profits acquired by such unlawful means, are in contemplation of law, co-partnership profits.

In this view of the law, it is quite immaterial whether the defendants engaged in mining or trading, or any other business on their private account during the existence of the partnership; in either alternative, the profits are equally partnership property.

The main question in the cause is then narrowed down to this : Did the defendants acquire the money which is sought to be enjoined, by their skill and labor, or by the employment of the company property in mining, or trading, or any other kind of business on company or private account during the existence of the firm ?

It is not pretended the defendants had any money or property when they sailed for California, except what was furnished by the plaintiff. It seems they had no credit, for the plaintiff was obliged to pay a debt, which they owed another firm, before they were permitted to leave the State.

They arrived at the mines on the 20th of February, 1850, as stated in their answer. On the 24th of March following, they were at the mines engaged in mining with the implements, tools and appliances for mining and other company property in their possession.

They admit they had earned at that time by digging, two hundred and twelve dollars.

From the affidavit of James F. Eddy, it appears they subsequently employed ten men in mining on their private account. And when they left the mines, they sold the provisions they had on hand, for nearly five hundred dollars. On their passage from New York to Providence,

Robert W. Potter *vs.* Moses & Gray.

in reply to a question from John D. Craven, how they made out in California, they stated better than they expected. In their answer, they give no account of the company property on hand on the 24th of March, 1850, when they claim the co-partnership was dissolved, nor of what disposition or use they made thereafter of this property, nor in what employment they were engaged thereafter. Neither do they give any account of the manner in which they acquired the property which is the subject of the present suit.

In the absence of all account from the defendants, I feel myself bound to say, that the evidence put in on the part of the plaintiffs satisfies my mind, that this property is co-partnership property, and was acquired by the defendants by their skill and labor in mining, or trading, or both, with the company property, during the existence of the co-partnership.

Upon this view of the facts, the property belongs to the co-partnership; and the defendants having attempted to convert it to their own private use, and having denied the title of the co-partnership thereto, I feel it my duty to withdraw the property from their control by granting the injunction prayed for and the appointment of a receiver.